**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAURIE IRENE GANDER, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO.  20-300 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                           June 29, 2020

Laurie Irene Gander ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of

the final decision of the Commissioner of the Social Security Administration ("the

Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the

Social Security Act.  Plaintiff has filed a brief in support of her request for review and the

Commissioner has responded to it.  For the reasons set forth below, Plaintiff's request for review

is denied and judgment is entered in favor of the Commissioner.

**I.        PROCEDURAL HISTORY**[1]

On December 27, 2016, Plaintiff applied for DIB benefits; she alleged disability began on

December 15, 2015.  Pl. Br. at 1; Resp. at 1; R. 16.  The Social Security Administration ("SSA")

denied Plaintiff's claims on March 31, 2017; therefore, she requested a hearing before an

Administrative Law Judge ("ALJ").  Pl. Br. at 1; R. 16.  The SSA granted Plaintiff's request and

convened a hearing on November 6, 2018.  R. 16.

Plaintiff, in Allentown, Pennsylvania, appeared via video for her hearing before ALJ

---

[1] The Court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Motion for Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), the administrative record.  ("R."), and Exhibits (Ex.).

Vivian McAneney, in Elkins Park, Pennsylvania; Plaintiff, represented by an attorney, and vocational expert, Dennis L. Mohn ("the VE"), testified at the hearing. R. 16, 62. On January 14, 2019, the ALJ, using the sequential evaluation process for disability[2], issued an unfavorable DIB decision. R. 16-29. Thereafter, on December 19, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final determination. R. 1-7; Pl. Br. at 1-2. On January 16, 2020, Plaintiff sought judicial review from this Court; both parties have consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c).

## II.    FACTUAL BACKGROUND

A.    Personal History

Plaintiff, born on April 12, 1976, R. 39, was 42 years old on the date of her administrative hearing. R. 27. She possesses a bachelor's degree in English. R. 27, 39. Plaintiff is divorced; she had primary custody of her twelve-year-old daughter, but now has partial custody. R. 58.

Plaintiff, at the time of the hearing was still working four to six hours per week as a swim instructor at a local YMCA. Pl. Br. at 2; R. 47-49. From 2001 to 2006, she worked as a sales

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

administrator at Sunbelt Beverage; she become a visitor center coordinator for Bucks County Conference Center from 2007 to 2012.  R. 43.  Next, Plaintiff worked in BMW's billing department; she was demoted to a receptionist, because of memory and concentration issues.  Pl. Br. at 2; R. 39-42.  After BMW let Plaintiff go, she found employment at Analytical Labs handling simple data entry.  R. 47; Pl. Br. at 2.  Plaintiff lost that job after approximately four months.  R. 47.

B.      Plaintiff's Testimony

Plaintiff testified about her impairments at the November 6, 2018 hearing.  R. 34-66.  She testified that she was first diagnosed with multiple sclerosis ("MS") in 2001, at the age of 24.  R. 45.  Plaintiff further suffers from lumbar degenerative disc disease, a failed fusion surgery and anxiety and depression.  R. 49-52, 59.

Plaintiff testified that MS impacts her flexibility, produces lower back pain, and makes her unable to correct her gait.  R. 50.  She alleges that her MS causes balance issues; she has fallen on multiple occasions and required numerous trips to the emergency room.  *Id*.  Plaintiff explained that, at most, she can sit for an hour before she must change her position or stand.  *Id*.  She drives "slowly" and no further than five to ten miles from her house.  *Id*.  Plaintiff stated that "lifting is no good" and exhausts her; she is able to do home stretches.  R. 56.  Even so, Plaintiff testified that she is able to lift a gallon of milk, assist her elderly mother grocery shop, and lift a case of soda from the car with two hands.  R. 52.

Plaintiff underwent pain management treatment in March of 2016 using prescribed Percocet, Vicodin, Tramadol, and Hydrocodone.  R. 668-715; R. 61-63.  She testified that, although she initially did not take more than she was prescribed, she has seen an addiction specialist for the last eight years.  R. 61-62.  Plaintiff testified that her opioid dependence is under

control.  R. 62.

Plaintiff also testified about her degenerative disc disease.  She stated that she suffers from chronic lumbar pain that radiates throughout the right side of her body and into her lower extremities, limiting her ability to stand or sit for extended periods of time.  R. 50-54.  She also experiences shoulder pain and bilateral hand numbness.  R. 53.  Plaintiff testified that back pain impedes her ability to sleep at night; resultant fatigue requires her to nap several hours throughout the day.  R. 55.

Plaintiff testified that her impairments impact her memory and ability to follow instructions.  R. 57.  Specifically, she stated that her memory regressed over the two years prior to her hearing.  *Id*.  Plaintiff described her short-term memory as "mini blackouts" because she cannot recall movies she had recently watched with her daughter.  *Id*.  Instead, Plaintiff uses a notebook to record important data; she writes down important dates, a to-do list, and upcoming doctors' appointments.  R. 58.  Plaintiff alleged that she lost her job at BMW, because she continued to make simple mistakes, had difficulty sitting and standing, and missed days from work.  R. 46.

Finally, Plaintiff testified that she suffers from anxiety and depression.  R. 59.  She stated that she struggles with panic attacks; some of which have been severe enough to require an ER visit.  *Id*.  Plaintiff testified that, after her divorce, she originally had primary custody over her daughter, but, as her symptoms and impairments worsened, she gave custody to her husband, because she was unable to care for her daughter on a day-to-day basis.  R. 58-59.  Plaintiff, however, admitted that much of her anxiety and panic attacks stem from her divorce, ex-husband, and caring for her daughter.  R. 59-60.

C.    Vocational Testimony

At the administrative hearing, VE Mohn classified Plaintiff's two jobs at BMW and her

position as an information clerk as sedentary[3] and her position as a sales administrator as light[4]. Furthermore, the VE classified all her prior jobs as semiskilled[5]. The ALJ asked the VE a hypothetical question that considered a person of Plaintiff's age, education, and work background, who was limited to sedentary exertion work and occasional postural activities, and unable to climb ladders, ropes, or scaffolds, could tolerate no more than occasional exposure to extreme cold or heat, vibration, or hazards, and could involve repetitive tasks, excluding work on an assembly line. R. 63.  The individual would have no more than occasional interaction with the public and co-workers and requires an option to alternate between sitting and standing at 30-minute intervals. *Id*.

The VE stated that such an individual would not be able to perform any of the Plaintiff's past work, however, other work exists in the national economy.  *Id*.  The VE identified three suitable sedentary, unskilled jobs: (1) bench assembler (180,000 positions nationally), (2) hand packager (110,000 positions nationally), and (3) visual inspector (200,000 positions nationally). R. 63-64.

Next, the ALJ asked the VE how many absences that such an individual could have.  R. 64.  The VE answered that a maximum of two to three days of absenteeism per month is generally acceptable.  *Id*.  Finally, the ALJ asked what impact would occur if an individual required two

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. § 404.1568(b).

additional work breaks, each lasting fifteen to thirty minutes. *Id.* The VE responded that such a person would not be able to sustain employment. *Id.*

Plaintiff's attorney asked the VE whether an individual who was unable to use both hands throughout the day would be able to work as a bench assembler, hand packager or visual inspector; the VE responded that she would not be able to sustain that employment. R. 64-65. The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles; his testimony regarding off task time and absenteeism was based on a 2012 study. R. 64.

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.  The [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2021.

2.  The [Plaintiff] has not engaged in substantial gainful activity since December 15, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The [Plaintiff] has the following severe impairments: lumbar degenerative disc disease, status-post fusion, [MS], anxiety, and substance abuse disorder (20 CFR 404.1520(c)).

4.  The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) which involves occasional postural changes except no climbing ladders, ropes or scaffolds; occasional exposure to cold and heat, vibration, and hazards; routine and repetitive tasks, but no assembly-line work; no more than occasional changes in work processes or tasks; occasional interaction with the public and coworkers; and the option to alternate sitting and standing at 30 minute intervals.  (20 CFR 404.1520(c) and 416.920(c)).

6.      The [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7.      The [Plaintiff] was born on April 12, 1976 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.      The [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because used the Medical-Vocational rules as a framework supports a finding that the [Plaintiff] is "not disabled," whether or not the [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform (20 CFR 404.1569 and 404.1569a).

11.     The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from December 15, 2015, through the date of this decision (20 CFR 404.1520(g)).

R. 18-19, 24, 27-29.

## IV.   DISCUSSION

A.      Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  It is more than a mere scintilla of evidence but may amount to less than an evidentiary

preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceeding

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is

8

capable of performing given her age, education, work experience and residual functional capacity.

*See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined, pursuant to 20 C.F.R. §§§ 404.1520(d), 404.1525, and 404.1526, that Plaintiff does not have an impairment or combination of impairments that meet or equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  R. 19.  The ALJ determined that, although Plaintiff was unable to perform any past relevant work, there are jobs in the national economy that she can perform.  R. 27-28.  Finally, the ALJ determined that it was not necessary to determine whether Plaintiff possessed transferable skills, because, using the Medical-Vocational Rules used as a framework for decision-making, supports a finding that Plaintiff is not disabled.  R. 28.

Plaintiff asserts that the ALJ failed to: (1) consider the combined effects of her severe impairments; (2) appropriately credit her testimony; (3) consider her medications' sedating effect; and (4) pose an appropriate hypothetical to the VE that included her full range of exertional and non-exertional limitations.  Pl. Br. 7, 8-11.  Plaintiff further argues that the ALJ's decision is not supported by substantial evidence.  *Id*.

The Commissioner disputes Plaintiff's arguments and maintains that the ALJ's decision is supported by substantial evidence.  Resp. at 1-19.

This Court finds that the ALJ did not commit error and that her decision is supported by substantial evidence.  The ALJ properly evaluated Plaintiff's combination of impairments, her testimony, her medications' sedating effects, and asked the VE an appropriate hypothetical. Hence, remand is not appropriate.

1.   The ALJ Properly Evaluated Plaintiff's Combination of Impairments

Plaintiff argues that, although the ALJ does note each of Plaintiff's impairments, she considered them singly rather than in combination.  Pl. Br. at 8.  Because of this failure, she contends the ALJ erred when she did not address the cumulative impact these impairments had on Plaintiff.  *Id*.

This Court disagrees; as stated above, the ALJ is required to review the relevant evidence and, if there is substantial evidence to sustain her factual determinations, this Court accepts those fact-findings.  *See Poulos*, 474 F.3d at 91.  Substantial evidence is less than a preponderance.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).  Here, the ALJ thoroughly explained Plaintiff's medical record, considered all her symptoms, and testimony; she determined that, although Plaintiff's physical and mental impairments could reasonably cause the alleged symptoms, her allegations of intensity, persistence, and limiting effects were not consistent with Plaintiff's treating records or normal daily activities.  R. 25.

The ALJ considered Plaintiff's impairments singly and cumulatively.  She thoroughly reviewed the medical record and discussed objective medical tests in regard to Plaintiff's physical and mental impairments in combination with one another.  The ALJ cites numerous brain MRIs, physical examinations, x-rays and CT scans to address Plaintiff's gait, balance, lower back, neurological abnormalities and strength.  R. 19-21.  Specifically, the ALJ cited treatment records from September 2017 that show no motor or sensory deficits, a CT of Plaintiff's brain that showed no acute intracranial changes and stable minimal decreased attenuation in deep white matter which correlates to her MS, and an MRI of her spine which showed, stable small demyelinating, lesions in her spinal cord.  R. 20.  The ALJ addressed each subjective complaint and its relation to her other impairments. R. 25-27.

Hence, the ALJ's opinion appropriately considered the combined effects of Plaintiff's severe impairments and is supported by substantial evidence.

2. The ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff argues that the ALJ erred when she improperly discredited Plaintiff's testimony. Pl. Br. at 9.  She alleges the ALJ discredited her testimony, because of her prior use of narcotics for pain management and "drug seeking behavior."  Pl. Br. at 9.  Plaintiff contends that the ALJ erred when she opined that she does not have significant balance issues, when the record is replete with emergency room visits due to balance issues and her multiple falls.  *Id*.  She also asserts that the record clearly establishes that she suffers from lower back pain and severe anxiety, evidenced by her multiple emergency room visits.  Pl. Br. at 9-10.

Plaintiff's argument fails, because, although the ALJ cited Plaintiff's history of substance abuse, she did not use it as a basis to discredit Plaintiff's testimony.  Instead, the ALJ determined that it was indicative of difficulties coping or adapting in an appropriate manner.  R. 24. Furthermore, as stated above, the ALJ thoroughly discussed objective medical evidence such as her x-rays, MRIs, CT scans and Plaintiff's consultative examination.  R. 20-24, 26-27.  The ALJ noted that Plaintiff's objective tests showed mild or moderate bilateral foraminal narrowing, unremarkable imaging studies of her sacrum and coccyx, and no acute fracture of her lumbar spine. R. 20.  The Plaintiff's consultative examination for her depression, which the ALJ cited, showed that her memory, attention, and concentration were intact.  R. 21.  The ALJ further cited exhibits in the record to show that Plaintiff's mental status was unremarkable despite the fact that she dealt with divorce and custody issues[6].

The ALJ relied on exhibits 16F, 17F, 18F, 19F, and 21F when she discussed the Plaintiff's

---

[6] R. 553-54, 556-57, 559-87, 605-38, 659-66, 733, 751-53, 787-89, 904-11 and 1218-20.

strength, sensation and gait.   These exhibits, the ALJ determined, showed that Plaintiff's

examination findings were unremarkable[7].  The ALJ noted that Plaintiff's multiple falls were not

caused by her impairments; rather, she had fallen because she had slipped on ice.  R. 20, 25-27.

Furthermore, although with the ALJ's determinated that Plaintiff did not suffer from significant

balance issues, she still limited Plaintiff to only occasional postural changes.  R. 24-27.

Hence, the ALJ's decision is supported by substantial evidence and she appropriately

evaluated Plaintiff's testimony.

3.   The ALJ Properly Considered the Sedating Effects of Plaintiff's Medication

Plaintiff argues that many of her medications, including Percocet, Vicodin and Tramadol,

induce significant fatigue throughout the day which require her to take multiple naps.  Pl. Br. at

10.  Asserted side effects include severe fatigue, drowsiness, light headedness, and dizziness.  Pl.

Br. at 11.  Plaintiff alleges that the ALJ's opinion does not consider these sedating effects which

Plaintiff contends cause her to be off task during the workday to such a degree that she would she

would not be able to properly perform.  Pl. Br. at 10-11.

This Court disagrees.  Plaintiff does not cite any evidence in the record or her own

testimony to support her bald assertion that her medication causes sedation or fatigue.  Instead, she

testified that she suffers from fatigue throughout the day due to her back pain and MS.  R. 46 and

55.  Furthermore, no treating medical provider opined that she suffers fatigue, drowsiness, light

headedness or dizziness because of the medication she takes.  The ALJ considered Plaintiff's

fatigue throughout her RFC, because Plaintiff specifically testified that her MS and back pain

caused low energy and difficulty sleeping.  R. 21.

---

[7] R. 323-25, 381-86, 403-06, 615-18, 761-64, 864-67.

4.   The ALJ Posed a Proper Hypothetical to the VE

Plaintiff argues that the ALJ posed a flawed hypothetical to the VE when she failed to accurately include all of the Plaintiff's exertional and non-exertional limitations. Pl. Br. at 11.  She asserts that the record clearly shows that Plaintiff has significant cognitive deficits that cause memory problems, balance issues and gait dysfunction.  *Id*.  Plaintiff also contends that her MS causes extreme fatigue which requires her to nap for several hours throughout the day.  *Id*.  Finally, she argues that the VE opined that she would not be able to sustain employment since her limitations required two to three unexpected fifteen to thirty minute breaks.  *Id*.

This Court is not persuaded.  Although Plaintiff testified to cognitive issues, the ALJ cited two state psychologists' opinions that found that the Plaintiff is able to carry out short and simple instructions, and had only mild difficulty understanding, remembering, and making judgments on simple work-related decisions.  R. 26.  The ALJ limited Plaintiff to simple, routine job tasks, consistent with unskilled work in consideration of those memory issues.  R. 25.  The ALJ cited multiple exhibits that found Plaintiff's gait and stance to be normal, she could fully squat, and had full strength in her upper and lower extremities. R. 20.  The ALJ mentioned that Plaintiff's physical examination described her stance as normal, she did not require an assistive device for ambulation, and her range of motion of both hands was normal.  *Id*.

Furthermore, the ALJ considered Dr. Kathleen Mullin, the physician who performed the consultative exam, medical statement in framing her hypothetical.  R. 26.  Dr. Mullin opined that Plaintiff could alternate between sitting for one hour and standing for thirty minutes throughout an eight-hour workday.  R. 26; Exhibit 6F.  The ALJ properly accommodated Plaintiff's limitations caused by MS when she limited Plaintiff to simple, routine tasks, consistent with unskilled work. R. 25.  Furthermore, the ALJ noted that, although Plaintiff's treating neurologist, Dr. Paul Shipkin,

reported that Plaintiff had complained of fatigue, it was "not accompanied by any specific objective finds or objective testing" and was based solely upon Plaintiff's subjective complaints. R. 27.

Inasmuch as the ALJ included Plaintiff's credible exertional and non-exertional limitations in the hypothetical question posed to the VE, the VE's conclusion is supported by substantial evidence.

## V.   CONCLUSION

Review of the relevant law and the record indicate that Plaintiff's assertions of error lack merit. Accordingly, her Request for Review is denied. An implementing Order and Order of Judgment follow.